# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**SAMUEL NERVEZA, JR.,**

        Plaintiff,

    v.

**COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION**,

        Defendant.

Civ. No. 3:14-cv-02045-CL

**REPORT
& RECOMMENDATION**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Samuel Nerveza, Jr., ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is not supported by substantial evidence, it should be **REVERSED** and **REMANDED**.

## BACKGROUND

Plaintiff was born on July 31, 1964. Tr. 241. He is a high school graduate with prior work experience as a senior service technical engineer, plant engineer, maintenance worker, and woodworker. Tr. 56-59. Each of these positions involved heavy, physically demanding work. Tr. 79. Plaintiff was injured in a head-on car accident on November 16, 2007. Tr. 53, 255. Since then, he has struggled with significant pain Tr. 303-04. As a result of that pain, Plaintiff has become sedentary, gained weight, and developed diabetes. Tr. 249-50.

On May 6, 2011, Plaintiff filed an application for benefits alleging disability since November 16, 2007 — the date of his car accident — due to a hip injury, lower back injury, and diabetes. Tr. 20, 297. The Commissioner denied Plaintiff's application initially and on reconsideration. Tr. 20. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on June 26, 2013. Tr. 20. On July 26, 2013, the ALJ issued a decision finding Plaintiff not disabled. Tr. 28. The Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's denial the final decision of the Commissioner Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each

step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 22. At step two, the ALJ found Plaintiff suffered from the following severe impairments: "[d]iabetes, status-post right shoulder AC separation, disc protrusion at L4-5, residuals from a motor vehicle accident, and obesity." Tr. 22. At step three, the ALJ found, considered singly and in combination, Plaintiff's impairments did not meet or medically equal the severity of any listed impairments. Tr. 23.

Next, the ALJ assessed Plaintiff's residual functional capacity ("RFC"). Tr. 24. She determined that Plaintiff could perform light work with the following qualifications:

> (1) The clamant is limited to occasional climbing of ramps and stairs and no climbing of ladders, ropes, and scaffolds; (2) the claimant is limited to occasional balancing, stooping, kneeling, crouching, and crawling; and (3) the claimant should avoid exposure to hazards such as unprotected heights and dangerous machinery.

Tr. 24. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 26. Considering Plaintiff's age, education, experience, and RFC, the ALJ determined Plaintiff was capable of performing jobs that exist in significant numbers in the national economy, including assembly worker and cashier. Tr. 27. Therefore, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, since the date of his application. Tr. 27-28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting his testimony without providing clear and convincing reasons for doing so, and (2) dismissing lay testimony for less than germane reasons. In addition, Plaintiff asserts the Appeals Council erred in its treatment of evidence submitted after the ALJ's decision was issued.

### I.    The ALJ Invalidly Discredited Plaintiff.

Plaintiff contends the ALJ improperly discredited his testimony. When gauging a claimant's credibility, an ALJ must engage in a two-step process. 20 C.F.R. §§ 404.1529, 416.929. First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Second, if such evidence exists, barring affirmative evidence of malingering,[1] the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Id.* at 1283-84. Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence[;] effective medical treatment[;] medical noncompliance[;] inconsistencies in the

---

[1] The ALJ found no evidence of malingering in this case.

claimant's testimony or between her testimony and her conduct[;] daily activities inconsistent with the alleged symptoms[;] and testimony from physicians and third parties about the nature, severity[,] and effect of the symptoms complained of." *Bowers v. Astrue,* No. 6:11–cv–583–SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012). An ALJ may also consider (1) "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid[,]" and (2) "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment[.]" *Smolen*, 80 F.3d at 1284. A general assertion that the Plaintiff is not credible is insufficient. The ALJ must identify what testimony is not credible and what evidence undermines the claimant's allegations. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). If the ALJ's credibility finding is supported by substantial evidence in the record, this Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ found Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms. Tr. 24. However, she found Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not fully credible. Tr. 24-25. The ALJ detailed two reasons for this determination. Plaintiff asserts they are neither clear nor convincing.

First, the ALJ found Plaintiff's "allegations of extreme fatigue and disability" were not consistent with his daily activities. Tr. 26. In particular, the ALJ noted that Plaintiff takes care of his own personal hygiene and grooming, prepares simple meals, maintains his house and yard, drives a car, shops, attends a weekly writer's group, is enrolled in school, watches his son's football practices, cares for his 10-year-old daughter, and goes fishing. Tr. 26. The Ninth Circuit

"has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from [his] credibility as to [his] overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). An ALJ can weigh a claimant's daily activities against his credibility only if they (1) contradict his other testimony or (2) constitute transferable work skills. *Id.* Neither ground is present here. The ALJ did not identify testimony she deemed to be at odds with Plaintiff's reported activities. Her finding that Plaintiff's "activities of daily living" "support the conclusion that [he] is able to return to work" is not sufficiently specific to permit this Court's review. Tr. 26; *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (an ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds"). The ALJ did not detail why she concluded Plaintiff's activities were transferable to a work setting. It is not apparent from the record how Plaintiff's ability to groom himself, for example, shows he is qualified for competitive employment. Without this information, the Court cannot confidently conclude that the ALJ properly weighed Plaintiff's day-to-day activities against him.

Second, the ALJ found that objective evidence showed Plaintiff's impairments did not preclude him "from engaging in all basic work activity[.]" Tr. 25. The ALJ cited various medical records that suggest Plaintiff can work despite the "musculoskeletal residual effects" of his car accident. Tr. 25. Plaintiff was released to light duty in August of 2008. Though he claims that he has "severe issues with lifting his arm to shoulder height," this condition is not mentioned in some provider notes. Tr. 25. His chief complaints have focused on his back, groin, and hip area. The ALJ also cited treatment notes that support her conclusion that Plaintiff's obesity and diabetes respond well to his prescribed treatment. When evaluating a claimant's statements, an

ALJ must "determine the extent to which [his] alleged functional limitations and restrictions …

can reasonably be accepted as consistent with the medical signs and laboratory findings[.]" 24

C.F.R. § 404.1529(a). The ALJ properly considered Plaintiff's statements regarding his alleged

physical impairments together with his medical records. However, this is not sufficient to uphold

her ultimate credibility determination. In the Ninth Circuit, a lack of medical evidence is relevant

to a claimant's credibility but cannot form the "sole basis" for discounting his testimony. *Burch*

*v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form

the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his

credibility analysis."). As discussed above, the ALJ's only other proffered reason for doubting

Plaintiff was erroneous. Therefore, even though the ALJ validly weighed the objective record

against Plaintiff, she erred when she discredited Plaintiff's testimony.

## II.    The ALJ Erroneously Disregarded Lay Testimony.

Plaintiff's friend and roommate, Patricia Mason, submitted a letter on Plaintiff's behalf.

Tr. 249. She explained that she helps Plaintiff "in all areas of daily life, save toileting and

bathing." Tr. 250. Most simple chores, like shopping, involve some twisting motion of the spine

which gives Plaintiff painful spasms. Tr. 249. Scar tissue "binds him up and causes him more

pain." Tr. 250. Plaintiff has been largely sedentary since his accident. Tr. 250. He has gained

weight and developed diabetes. Tr. 250. Ms. Mason described Plaintiff as an accomplished

musician who can no longer hold or strum a guitar. Tr. 249. He cannot play with his young

daughter, and he struggles to sit through her soccer games because of muscle spasms and pain.

Tr. 249.

Lay testimony regarding a claimant's symptoms is competent evidence that the

Commissioner must take into account. *Stout v. Comm'r,* 454 F.3d 1050, 1053 (9th Cir. 2006). "If

an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons that are germane to each witness [and] … the reasons germane to each witness must be specific." *Bruce v. Astrue,* 557 F.3d 1113, 1115 (9th Cir. 2009) (internal quotation marks omitted). Here, the ALJ found Ms. Mason's letter "supports the conclusion that [Plaintiff] is able to work within the limitations provided in the [RFC]" but discredited her testimony to the extent it suggested Plaintiff cannot work. Tr. 26. The ALJ viewed Ms. Mason's testimony with skepticism because her "close relationship" with Plaintiff "likely influenced her opinion[.]" Tr. 26.

The Commissioner concedes the ALJ's treatment of Ms. Mason's lay testimony was erroneous. Def.'s Br., at 10. Ms. Mason described limitations in excess of the RFC. Her relationship with Plaintiff does not qualify as a germane reason for disqualifying her testimony. To the contrary, her proximity to, and regular interactions with, Plaintiff make her a particularly valuable witness. *Smolen*, 80 F.3d at 1289. The Commissioner maintains that this error was inconsequential to the ultimately disability determination because Ms. Mason's testimony mirrored Plaintiff's testimony and, therefore, the ALJ's reasons for rejecting Plaintiff's testimony "apply with equal force" to Ms. Mason's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (and ALJ's failure to discuss lay testimony was harmless where the lay witness "did not describe any limitations beyond those [the claimant] herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons."). However, as discussed above, the ALJ erroneously discredited Plaintiff. The ALJ's treatment of Plaintiff's testimony does not quell the Court's concerns regarding the ALJ's flawed rejection of Ms. Mason's letter.

/ / /

/ / /

### III.    New Evidence Alters the Weight of the Evidence on the Record.

On August 14, 2013, Plaintiff's primary treating physician, Dr. Beverley De La Bruere, completed a statement on Plaintiff's behalf. Tr. 236, 423-25. Dr. De La Bruere described Plaintiff's primary symptoms as pain, muscle spasms, stiffness, and poor endurance. She wrote that Plaintiff could stand and/or walk for 20 minutes at one time and for 1 hour total in an 8-hour day.  Tr. 423. She indicated that Plaintiff could sit for 2 hours at one time and 4 hours total. Tr. 423. She opined that he would need to spend the rest of his time reclining with his feet up. Tr. 424. However, she noted that sometimes pain prevents Plaintiff from reclining for long. Tr. 424. In a standard workweek, Dr. De La Bruere estimated that pain would impair Plaintiff's ability to sustain the basic attention and concentration necessary to perform simple tasks more than 50 percent of the time. Tr. 425. She opined that Plaintiff would miss 16 hours or more a month from a simple and routine sedentary job because of his impairments. Tr. 425. She explained, "[e]ven carrying out simple home tasks like shopping or cleaning are difficult. Any twisting or turning can trigger worsening of pain."

Dr. De La Bruere drafted this statement weeks after the ALJ issued her unfavorable decision. Tr. 28. Therefore, the ALJ did not have the opportunity to consider it. The statement was, however, available on appeal. The Appeals Counsel accepted it into the record, but concluded that it did not provide a basis for changing the ALJ's decision. Tr. 1, 4. Because the statement is part of the record on which the ALJ's decision became final, this Court must consider it when assessing whether the denial is supported by substantial evidence. *Brewes v. Comm'r*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the

Commissioner's final decision for substantial evidence."). If the new evidence creates a reasonable possibility that it would change the outcome of the ALJ's decision, then remand is appropriate to allow the ALJ to consider the evidence. *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

The Court finds it reasonably probable the ALJ would have reached a different decision if given the opportunity to consider Dr. De La Bruere's statement. Specifically, the statement undermines the ALJ's conclusion that Plaintiff could maintain sufficient attendance to retain a job. At the ALJ's hearing, a Vocational Expert testified that a person who missed 16 hours of work per month would not be able to sustain competitive employment. Tr. 82. In her new statement, Dr. De La Bruere estimated that Plaintiff would miss at least 16 hours a month from a simple, sedentary job. Tr. 425. Reading this evidence together, it is reasonable to conclude that Plaintiff's poor attendance would prevent him from continued employment. Moreover, the Vocational Expert testified that a person would struggle to keep his job if he took unscheduled half hour breaks in the morning and afternoon. Tr. 81-82. Dr. De La Bruere opined that Plaintiff's concentration would be impaired more than 50 percent of a typical work day, and that he would need to recline with his feet up for a substantial portion of any day. Tr. 423-24. These statements are not readily agreeable with one another. Remand is appropriate to allow the ALJ to iron out these inconsistencies and consider the record in light of Dr. De Le Bruere's new statement.

## IV.   The Court Should Remand for Additional Proceedings.

Having determined that reversal is necessary, the Court must determine whether to remand Plaintiff's case for further proceedings or immediate payment of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits is within the

discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Smolen*, 80 F.3d at 1292. Here, for the reasons outlined above, remand is warranted for further development of the record and the consideration of new evidence.

## RECOMMENDATION

For the foregoing reasons, the Commissioner's final decision should be **REMANDED**. In further proceedings, the ALJ should:

1. Review Plaintiff's testimony regarding the severity of his symptoms, and either accept it as true or provide clear and convincing reasons for rejecting it.

2. Consider Ms. Mason's letter, and either accept it as competent evidence or provide specific and germane reasons for rejecting it.

3. Reconsider Plaintiff's application in light of Dr. De La Bruere's new statement.

This Report and Recommendation will be referred to a district judge. Objections, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen (14) days after the date the objections are filed. *See*

/ / /

/ / /

/ / /

FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of March 2016.

MARK D. CLARKE
United States Magistrate Judge